IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMERON HOSPITAL ASSOCIATION, a California Non-Profit Association,<br><br>         Plaintiff,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>         Defendant. | 2:10-cv-03396-GEB-JFM<br><br>**TENTATIVE RULING** GRANTING *SUA SPONTE* SUMMARY JUDGMENT IN FAVOR OF DEFENDANT |

In reviewing the pending cross-motions for summary judgment, it appears "the undisputed facts entitle [Defendant State Farm Mutual Automobile Insurance Company ('State Farm')] to judgment as a matter of law" on Plaintiff Dameron Hospital Association's ("Dameron") complaint for a reason not briefed by the parties. Portsmouth Square, Inc. v. S'holders Prot. Comm., 770 F.2d 866, 869 (9th Cir. 1985). Therefore, for the reasons stated below, the Court tentatively grants summary judgment, *sua sponte*, in favor of State Farm.

Dameron alleges in its complaint that it provided emergency medical treatment to three individuals who were involved in automobile accidents and had uninsured motorist coverage through Defendant State Farm Mutual Insurance Company ("State Farm"). Dameron alleges each individual assigned his or her uninsured motorist benefits to Dameron;

1

Dameron notified State Farm of the assignments; and State Farm refused to pay Dameron. Dameron seeks money damages in the amount of $44,714 plus interest and declaratory relief concerning State Farm's alleged failure to honor the assignments of benefits. Dameron also seeks an injunction against State Farm under California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 et seq., concerning State Farm's failure to honor the assignments. State Farm seeks summary judgment on both of Dameron's claims. Dameron seeks summary judgment on its failure to honor assignments claim.

## I. LEGAL STANDARD

"District courts unquestionably possess the power to enter summary judgment *sua sponte*, even on the eve of trial." Norse v. City of Santa Cruz, 629 F.3d 966, 971 (9th Cir. 2010). As prescribed in Federal Rule of Civil Procedure 56(f)(3): "[a]fter giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

## II. UNCONTROVERTED FACTS

This case concerns the following Dameron patient accounts and corresponding State Farm policy numbers: Michael G., Dameron account number *****0549 ($4,764.00), State Farm policy number 1147-196-55 ("Insured One"); Irma P., Dameron account number *****6610 ($37,768.39), State Farm policy number 1843-278-05A ("Insured Two"); and Dep. N., Dameron account number *****5185 ($2,181.46), State Farm policy number 112 9678-C25-55B ("Insured Three," and collectively, "Insureds"). (State Farm's Statement of Undisputed Facts in Support of Summ. J. ("State Farm's SUF") # 17-18, 29-30 & 45-46; Dameron's Statement of Add'l Facts in Support of Opp'n ("Dameron's SAF") # 3.)

"Insured One . . . was involved in an automobile accident on April 29, 2009" and had "uninsured motorist coverage of $50,000/$100,000" on that date. (State Farm's SUF # 17-18.) "Insured One complained of pain to the top of his head" at the scene of the accident and "was taken by ambulance . . . to Dameron." Id. # 20-21. "At Dameron, Insured One signed [Dameron's] Conditions of Admission form." Id. # 22-23. "[He] was diagnosed with a concussion . . . [and] Dameron noted that [he] had 'mild intoxication clinically.'" (State Farm's Statement of Additional Facts in Support of Opp'n ("State Farm's SAF") # 17-18.) However, a physician stated that Insured One "was oriented . . . to person, place and time." (Genicoff Test. 23:8-11, Mar. 30, 2012.)

"On August 13, 2009, Dameron advised State Farm of its claim that all of Insured One's insurance benefits, of any kind, had been assigned directly to Dameron based on the Assignment of Benefits provision contained [in] the Conditions of Admissions form." (State Farm's SUF # 25.) "Dameron requested that if any uninsured motorist funds are recoverable that State Farm make direct payment to Dameron for its charges of $4,764.00 for medical services rendered to Insured One." Id. # 26. "On April 15, 2010, State Farm settled Insured One's uninsured motorist claim for $25,000, inclusive of any and all liens[,]" and "issued the settlement draft of $25,000 [on the same day], made payable to Insured One and his attorney, Dean Cooper." Id. # 27-28.

"Insured Two . . . was involved in an automobile accident on August 6, 2008" and had "uninsured motorist coverage of $30,000/$60,000." Id. # 29-30. "At the scene of the accident, the officer described in the police report [Insured Two's] injuries as follows: 'Laceration to back of head, abrasions to right arm, right hand, and complaint of pain to all body.'" Id. #32. Insured Two was

3

taken by ambulance to Dameron, where she "was diagnosed as follows: 'Head injury with concussion unknown loss of consciousness (unknown LOC), ADDITIONAL: Cervical strain (whiplash), Hand contusion/ABRASION, Scalp laceration. Subarachnoid hemorrhage-traumatic.'" Id. # 34 & 37. "At Dameron, Insured Two signed the Conditions of Admission form." Id. # 36.

"On February 2, 2010, Insured Two's attorney, Walter Wroten [('Wroten'),] wrote to State Farm and stated that Insured Two '[would] satisfy any and all liens in this matter and . . . ask[ed] that State Farm issue payment of the policy limits of $30,000.00 immediately." (State Farm's SUF # 41.) "On February 15, 2010, Dameron advised State Farm of its claim that all of Insured Two's insurance benefits, of any kind, had been assigned directly to Dameron based on the Assignment of Benefits provision" and that "it agreed to compromise its assignment claim from $37,768.39 to $15,000.00 for payment upon settlement of Insured Two's uninsured motorist claim." Id. # 39-40. "On February 16, 2010, State Farm issued the settlement draft in the amount of $30,000, made payable to Insured Two and her attorney, in settlement of Insured Two's uninsured motorist claim." Id. # 43.

"Insured Three . . . was involved in an automobile accident on April 22, 2006." Id. # 45. Insured Three had "uninsured motorist coverage of $250,000/$500,000" and "medical payments coverage of $5,000 per person." Id. # 46-47. Insured Three complained of pain to her neck, chest, and back, and was taken by ambulance to Dameron. Id. # 48-49. "At Dameron, Insured Three was presented with the Conditions of Admission form," but "Dameron's admitting staff member noted on the . . . form that Insured Three was 'unable' to sign [it]." Id. # 50-51. "Insured Three's emergency room record from Dameron stated that she is non-

English speaking." Id. # 52. "On July 25, 2006, Attorney Julie Pulliam [('Pulliam')] sent correspondence to State Farm[,] . . . advised that she represented Insured Three[, and] . . . specifically requested that any payments be made to her and Insured Three . . . '[regardless of any] assignment of benefits[.]'" Id. # 55-56. In 2007, State Farm paid Insured Three's medical payments coverage limit of $5,000.00 and an additional $5,000.00 as settlement for her uninsured motorist claim to Insured Three and her attorney. Id. # 60-62. On October 8, 2009, "Dameron advised State Farm of its claim that all of Insured Three's first party benefits had been assigned to Dameron under the Conditions of Admission." Id. # 54; Letter from Dameron to State Farm, Oct. 8, 2009, Pl.'s Evidence Ex. 21.

### III. DISCUSSION

Dameron argues it "has established all [the elements of an assignment for each Insured] through competent evidence." (Dameron's Mot. 7:22-27.) State Farm argues, *inter alia*, "Dameron's assignment of benefits provision is unenforceable." (State Farm's Opp'n 6:12-13; State Farm's Mot. for Summ. J. 9:10-11.) State Farm also moves for summary judgment in its favor on Dameron's UCL

"[An] assignee may recover from the debtor of the assignor with notice, upon allegation and proof that the debtor, after notice, paid the assignor." St. Paul Fire & M. Ins. Co. v. James I. Barnes Const. Co., 29 Cal. 2d 691, 692 (1963). "The burden of proving an assignment falls upon the party asserting rights thereunder." Cockerell v. Title Ins. & Trust Co., 42 Cal. 2d 284, 292 (1954) (citations omitted). "While no particular form of assignment is necessary, [an] assignment, to be effectual, must be a manifestation to another person by the owner of the right indicating his intention to transfer, without

5

further action or manifestation of intention, the right to such other person, or to a third person." Cockerell, 42 Cal. 2d at 291. "In determining whether an assignment has been made, 'the intention of the parties as manifested in the instrument is controlling.'" Cal. Ins. Guarantee Ass'n v. Workers Comp. Appeals Bd., 203 Cal. App. 4th 1328, 1335 (2012) (quoting Nat'l. Reserve Co. of Am. v. Metro. Trust Co. of Cal., 17 Cal. 2d 827, 832 (1941)). Further, "the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue[,] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee." Cockerell, 42 Cal. 2d at 291 (citations omitted).

Dameron argues "[e]ach patient . . . assented to a [Conditions of Admission agreement] that contains an enforceable assignment of all insurance benefits to Dameron." (Dameron's Mot. 5:11-12.) The Assignment of Benefits provision in the Conditions of Admission form states in full:

> ASSIGNMENT OF INSURANCE BENEFITS
>
> The undersigned authorizes, whether he/she signs as agent or as patient, direct payment to the hospital and the physicians specifically associated with the patient's medical care, of any insurance benefits otherwise payable to or on behalf of the undersigned for this hospitalization or for these outpatient services, outpatient observation care, including emergency services if rendered, at a rate not to exceed the provider's regular charges. It is agreed that payment to the hospital, pursuant to this authorization, by an Insurance company shall discharge said Insurance company of any and all obligations under a policy to the extent of such payment. It is understood by the undersigned that he/she is financially responsible for charges not covered by this agreement.

1  (State Farm's SUF # 4-5, 14-15; State Farm's Evid. in Support of Summ.
2  J. Ex. 4-6.)

3  "Under California law, the interpretation of a contract is a
4  question of law[.]" In re Bennett, 298 F.3d 1059, 1064 (9th Cir. 2002)
5  (citation omitted). California civil Code section 1638 prescribes: "The
6  language of a contract is to govern its interpretation, if the language
7  is clear and explicit, and does not involve an absurdity." In addition,
8  "[a] written contract must be read as a whole and every part interpreted
9  with reference to the whole." Shakey's Inc. v. Covalt, 704 F.2d 426, 434
10 (9th Cir. 1983) (citation omitted).

11 Dameron argues the provision above operates as an assignment
12 of an insured's right to payment of his or her uninsured motorist
13 benefits. However, the words "assign" or "transfer" or some variation
14 thereof do not appear in the text of the provision. Cf. Nat'l Reserve
15 Co. of Am. v. Metro. Trust Co. of Cal., 17 Cal. 2d 827, 831 (1941)
16 (finding "language of assignment" in a provision that stated "the
17 undersigned hereby *assigns* and *transfers* all of his right, title and
18 interest in and to the hereinabove property") (emphasis in original);
19 Whiteside v. Tenet Healthcare Corp., 101 Cal. App. 4th 693, 699 (2002)
20 (involving a provision similar to the one in this case: "The undersigned
21 *assigns* and hereby authorizes . . . direct payment to the hospital of
22 all insurance and plan benefits").

23 Rather, the provision "*authorizes* . . . direct payment to
24 [Dameron or its physicians.]" (State Farm's Evid. in Support of Summ. J.
25 Ex. 4-6.) The term "authorize" means "to give a right or authority to
26 act . . . [and it] is sometimes construed as equivalent to
27 'permitted[.]'" BLACK'S LAW DICTIONARY 133 (6th Ed. 1990). The meaning of
28 the provision on which Dameron relies is "clear and explicit": State

Farm has its insured's permission to pay Dameron. Therefore, the contract language does not evince an "intention to transfer, without further action or manifestation of intention, the *right*" to receive payment of uninsured motorist benefits. Cockerell, 42 Cal. 2d at 291 (emphasis added).

The contract language on which Dameron relies does not operate as an assignment. Since State Farm moves for summary judgment on this claim based on its argument that the provision is not an enforceable assignment of benefits, summary judgment is granted in favor of State Farm on Dameron's failure to honor assignment of benefits claim.

In addition, Dameron's UCL claim is based on its argument that State Farm has engaged in an "unlawful," "unfair and systematic scheme to violate the assignment of first-party insurance benefits to Dameron." (Dameron's Opp'n 10:27-11:4.) Since this claim is based on the failure to honor assignments claim, summary judgment is entered in favor of State Farm on this claim as well.

Any party may file and serve written objections to any part of this tentative ruling no later than fourteen (14) days after the date on which this order is filed. Any objection must specify the requested correction, addition, and/or deletion. If no objection is filed, this tentative ruling will become final without further order of this Court, and the Clerk of Court will be directed to enter judgment for Defendant.

Dated:   September 7, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge