IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DAMERON HOSPITAL ASSOCIATION, a California Non-Profit Association,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>    Defendant. | 2:10-cv-03396-GEB-JFM<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

Pending are cross-motions for summary judgment on Plaintiff Dameron Hospital Association ("Dameron")'s complaint. A tentative ruling was filed on September 10, 2012, granting summary judgment *sua sponte* in favor of Defendant State Farm Mutual Automobile Insurance Company ("State Farm") since certain language contained in the relevant Conditions of Admission forms did not assign a patient's automobile insurance benefits as Dameron argued. (ECF No. 72.) Both parties filed responses to the tentative ruling. (ECF Nos. 74-75, 77.) The September 10, 2012 tentative ruling is not adopted; instead, the following order issues.

**I. BACKGROUND**

Dameron alleges in its Complaint that it provided emergency medical treatment to three individuals who were involved in automobile accidents and had automobile insurance coverage through State Farm.

1

Dameron alleges each individual assigned his or her automobile insurance

Dameron alleges each individual assigned his or her automobile insurance benefits to Dameron as a condition of admission; Dameron notified State Farm of the assignments; and State Farm refused to pay Dameron. Dameron seeks money damages from State Farm in the amount of $44,714 plus interest and declaratory relief concerning State Farm's alleged failure to honor the assignments of benefits. Dameron also seeks an injunction against State Farm under California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 *et seq.*, concerning State Farm's failure to honor the assignments.

Dameron seeks partial summary judgment on its failure to honor assignments claim. State Farm seeks summary judgment on both of Dameron's claims, arguing, *inter alia*, the three automobile insurance policies at issue expressly prohibit the insureds from assigning their benefits without State Farm's written consent, and State Farm did not provide written consent to the purported assignments.

## II. LEGAL STANDARD

When deciding cross-motions for summary judgment, each motion is evaluated on its own merits, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001); Bryan v. McPherson, 630 F.3d 805, 823 (9th Cir. 2010) (stating "all reasonable inferences must be drawn in favor of the non-moving party").

Concerning Plaintiff's motion, as the party who "bear[s] the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000) (quoting Houghton v.

1  South, 965 F.2d 1532, 1536 (9th Cir. 1992)). "In such a case,
2  [Plaintiff] has the initial burden of establishing the absence of a
3  genuine issue of fact on each issue material to its case." Id. (citation
4  omitted). "Once [Plaintiff] comes forward with sufficient evidence, 'the
5  burden then moves to [Defendant], who must present significant probative
6  evidence tending to support its claim or defense.'" Id. (quoting Intel
7  Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.
8  1991)).

9       When the defendant is the moving party and is seeking summary
10 judgment on one or more of a plaintiff's claims, the defendant

> has both the initial burden of production and the
> ultimate burden of persuasion on [the motion]. In
> order to carry its burden of production, the
> [defendant] must either produce evidence negating
> an essential element of the [plaintiff's]
> claim . . . or show that the [plaintiff] does not
> have enough evidence of an essential element to
> carry its ultimate burden of persuasion at trial.
> In order to carry its ultimate burden of persuasion
> on the motion, the [defendant] must persuade the
> court that there is no genuine issue of material
> fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted).

### III. UNCONTROVERTED FACTS

**A.  The Patient Accounts and Corresponding Automobile Insurance Coverage at Issue**

This case concerns the following Dameron patient accounts and corresponding State Farm policy numbers: Michael G., Dameron account number *****0549 ($4,764.00), State Farm policy number 1147-196-55 ("Insured One"); Irma P., Dameron account number *****6610 ($37,768.39), State Farm policy number 1843-27S-05A ("Insured Two"); and Dep N., Dameron account number *****5185 ($2,181.46), State Farm policy number

112 9678-C25-55B ("Insured Three," and collectively, "Insureds"). (State Farm's Separate Statement of Undisputed Material Facts in Support of Mot. for Summ. J., ECF No. 24 ("State Farm's SUF") # 17-18, 29-30 & 45-46; Dameron's Separate Statement of Undisputed Material Facts in Support of its Mot. for Summ. J., ECF No. 30-1 ("Dameron's SUF") # 3.)

"Insured One . . . was involved in an automobile accident on April 29, 2009" and had "uninsured motorist coverage of $50,000/$100,000" on that date. (State Farm's SUF # 17-18.) Insured One "was taken by ambulance . . . to Dameron." Id. # 21. "[He] was diagnosed with a concussion . . . [and] Dameron noted that [he] had 'mild intoxication clinically.'" (State Farm's Statement of Additional Facts in Support of Opp'n to Dameron's Mot. for Summ. J. ("State Farm's Add'l Facts") # 17-18.) "On April 15, 2010, State Farm settled Insured One's uninsured motorist claim for $25,000, inclusive of any and all liens[,]" and "issued the settlement draft of $25,000 [on the same day], made payable to Insured One and his attorney . . . ." (State Farm's SUF # 27-28.)

"Insured Two . . . was involved in an automobile accident on August 6, 2008" and had "uninsured motorist coverage of $30,000/$60,000." Id. # 29-30. Insured Two was taken by ambulance to Dameron, where she "was diagnosed as follows: 'Head injury with concussion unknown loss of consciousness (unknown LOC), ADDITIONAL: Cervical strain (whiplash), Hand contusion/ABRASION, Scalp laceration. Subarachnoid hemorrhage-traumatic.'" Id. # 34 & 37. "On February 16, 2010, State Farm issued [a] settlement draft in the amount of $30,000, made payable to Insured Two and her attorney, in settlement of Insured Two's uninsured motorist claim." Id. # 43.

1  "Insured Three . . . was involved in an automobile accident on
2  April 22, 2006." Id. # 45. Insured Three had "uninsured motorist
3  coverage of $250,000/$500,000" and "medical payments coverage of $5,000
4  per person." Id. # 46-47. Insured Three complained of pain to her neck,
5  chest, and back, and was taken by ambulance to Dameron. Id. # 48-49. In
6  2007, State Farm paid Insured Three's medical payments coverage limit of
7  $5,000.00 and an additional $5,000.00 as settlement for her uninsured
8  motorist claim to Insured Three and her attorney. Id. # 60-62.

**B.   Conditions of Admission Forms**

At Dameron, each insured was presented a Conditions of Admission form. Id. # 22, 35, 50. Insureds One and Two signed the form. Id. # 23, 36. Insured Three did not sign the form. (Dameron's Conditions of Admission form, page 2, attached as Bates No. 23 to Dameron's Separately Bound Evidence in Supp. of its Mot. for Summ. J. ("Dameron's Evid."), ECF No. 30-2, page 25.) "Dameron's admitting staff member noted on the . . . form that Insured Three was 'unable' to sign [it]." (State Farm's SUF #51.) "Insured Three's emergency room record from Dameron stated that she is non-English speaking." Id. # 52.

Dameron's person most knowledgeable concerning Dameron's policies and procedures used by admitting staff to obtain signatures on its Conditions of Admission forms, Craig Haupt, testified as follows concerning the timing of when hospital staff presents patients with the Conditions of Admission form for signature:

> Q.   Now, what are the policies and procedures of the clerks who obtain signatures on the Conditions of Admission forms to follow in the obtaining of that signature?
>
> A.   Well, once medical staff clears that the patient is stable enough to sign it, they would present it to the patient for signature.

5

> . . . .
>
> [O]nce the clerk is told that the patient is able to sign it, then they would present it for signature.
>
> . . . .
>
> Doesn't have to be a doctor; it could it could be the nurse; it could be the triage nurse. Or if the patient is not emergent and goes straight to the window, it could be at that time.
>
> . . . .
>
> The procedure, if a patient is stable, they will present it to the patient for signature.
>
> If a patient isn't stable, at a time when the patient becomes stable and the physician and/or nurse or medical staff let the admitting clerk know that the patient is stable, they will then give it to them at that point.

(Dep. of Craig Haupt, ECF No. 64, 106:22-107:2, 107:9-11, 107:16-19, 110:11-17.)[1] Mr. Haupt also testified that it is important to get signatures on Conditions of Admission because that form "is the [patient's] consent, and it's important to get consent when we can." Id. at 119:17-21.

Insured Two's Conditions of Admission form indicates that it was signed at 12:48 p.m. on August 6, 2008. (Dameron's Evid. Bates No. 17.) Insured Two's billing records include dates of service for medical treatment at Dameron from August 6, 2008 through August 9, 2008. Id. Bates Nos. 26-28. Insured Three's Conditions of Admission form indicates it was presented to her for signature at 10:33 p.m. on April 22, 2006. Id. Bates No. 23. Insured Three's billing records include dates of

---

[1] "Federal Rule 56(c)(3) provides that the court 'may' consider materials in the record that were not specifically cited by either party." Ward v. Vilsak, No. 2:10-cv-00376 KJM KNJ PS, 2011 WL 6026124, at *3 (E.D. Cal. Dec. 2, 2011).

service for medical treatment at Dameron on April 22, 2006 and April 23, 2006. Id. Bates No. 35.

### C. State Farm's Change of Interest Clause

Each Insured's State Farm automobile insurance policy contains the following language:

> **CONDITIONS**
>
> **1. Policy Changes**
>
> . . . .
>
> **b. Change of Interest**. No change of interest in this policy is effective unless we consent in writing. However, if **you** die, we will protect as named insured, except under death, dismemberment and loss of sight, total disability and loss of earnings coverages:
>
> (1) **your** surviving **spouse:**
>
> (2) any **person** with proper custody of your car, a **newly acquired car** or a **temporary substitute car** until a legal representative is qualified; and then
>
> (3) the legal representative while acting within the scope of his or her duties.
>
> Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

(State Farm's SUF # 1-3.)

State Farm did not consent in writing to the Insureds' purported assignment of automobile insurance benefits to Dameron. Id. # 4-6.

### IV. DISCUSSION

Under California law, "[an] assignee [of money due under a contract] may recover from the debtor of the assignor with notice, upon

7

1  allegation and proof that the debtor, after notice, paid the assignor."
2  St. Paul Fire & M. Ins. Co. v. James I. Barnes Const. Co., 59 Cal. 2d
3  691, 692 (1963). However, "contracts may expressly provide that [they]
4  are not to be assigned, or [they] may contain equivalent provisions; in
5  either case [they] cannot be assigned." 1 Witkin, Summary of Cal. Law
6  (10th ed. 2005), Contracts § 713, p. 799 (citing Henkel Corp. v.
7  Hartford Accident & Indem. Co., 29 Cal. 4th 934, 943 (2003)). Therefore,
8  the issue to be decided is whether State Farm's "Change of Interest"
9  clause contained in each Insured's policy precluded the purported
10 assignment of insurance benefits to Dameron.

11         State Farm argues that the "Change of Interest" clause
12 contained in each Insured's policy "expressly prohibits [the] insured
13 from assigning his [or her] benefits unless State Farm provides written
14 consent." (State Farm's Mem. of P.&A. in Supp. of its Mot. for Summ. J.
15 ("State Farm's Mot.") 1:14-16.) State Farm further argues: "[h]ere,
16 there was no written consent . . . [; t]herefore, as a matter of
17 contract, any claim by Dameron against State Farm based upon . . . an
18 assignment . . . should not be given affect, and liability against State
19 Farm should not be imposed." Id. at 1:16-20.

20         Dameron rejoins that "an insurer cannot escape liability for
21 losses existing at the time of assignment by refusing to consent to the
22 assignment[; a]t that point, the indemnity is owed and it is up to the
23 insured to designate to whom the money is payable."(Dameron's Opp'n to
24 State Farm's Mot. for Summ. J. ("Dameron's Opp'n") 4:27-5:2 (citations
25 and emphasis omitted).) Dameron further argues:

26         at the time the patient(s) presented to Dameron,
           the loss had already occurred[; t]he patient[s] had
27         already suffered injuries in a car accident. Money
           was "due or to become due under the" insurance
28         policy. . . . Thus, the patient[s] w[ere] free to
           (and did) assign applicable insurance proceeds to

8

> Dameron. It is not up to State Farm to debate the assignment.

Id. at 6:1-8.

Under California law, "parties to a contract may make an agreement restricting the assignability of rights created thereunder so long as they do not violate statutory provisions or general rules of policy." Thomas v. Thomas, 192 Cal. App. 2d 771, 779 (1961)(citations omitted). "The courts, of course, have placed certain limits on nonassignment clauses - there is [a] strong policy in favor of the free transferability of all types of property, and the prohibition does not apply where all that remains to do under the contract is the payment of money." Id. (internal citations omitted). The California Supreme Court applied these principles in the context of the assignment of insurance benefits in Henkel Corp. v. Hartford Accident & Indemnity Co., 29 Cal. 4th 934 (2003). Both Dameron and State Farm cite Henkel in support of their arguments.

In Henkel, "[P]laintiff Henkel . . . acquired the metallic chemical product line of [Amchem No. 1] and assumed all related liabilities." Id. at 938. Subsequently, a lawsuit was filed against Henkel "alleg[ing] injuries arising from exposure to metallic chemicals [over a seventeen year period]. Henkel tendered its defense to defendant insurers, whose policies had insured Amchem No. 1 during portions of [the alleged period of exposure] . . . ." Id. at 939. Henkel argued it acquired Amchem No. 1's liability benefits by assignment. Id. at 941-943. The California Supreme Court held:

> [w]hether or not Amchem No. 1 assigned any benefits under the liability policies . . . , any such assignment would be invalid because it lacked the insurer's consent. . . . [I]n this case there is no dispute that each of the policies contained clauses providing that there could be no '[a]ssignment of

9

> interest under the policy' without the insurer's consent endorsed on the policy. Such clauses are generally valid and enforceable.

Id. at 943-44. Henkel argued insurer consent was not required because the "event giving rise to liability[,]" i.e. exposure to the metallic chemicals, occurred prior to the purported assignment. Id. at 944. The Court

> squarely rejected [Henkel's] theory . . . , holding instead that an assignment without the insurer's consent may be allowed only "(1) when at the time of the assignment the benefit has been reduced to a claim for money due or to become due, or (2) when at the time of the assignment the insurer has breached a duty to the insured, and the assignment is of a cause of action to recover damages for that breach."

2 Couch on Insurance (3d ed. 2011) § 34:2 (quoting Henkel, 29 Cal. 4th at 983, 945)); see also Fluor Corp. v. Sup. Ct., 146 Cal. Rptr. 3d 527, 537 (2012)("Henkel rejected the view that . . . policy benefits can be assigned without consent once the event giving rise to [coverage under the policy] has occurred.")

In this case, each Insured's policy states: "No change of interest in this policy is effective unless we consent in writing[,]" and it is undisputed that State Farm did not consent in writing to each Insured's purported assignment of insurance benefits to Dameron. This policy language is similar to the anti-assignment clause at issue in Henkel. See Henkel, 29 Cal. 4th at 943; see also Star Windshield Repair, Inc. v. Western Nat'l Ins. Co., 768 N.W.2d 346, 347 n.1 (Minn. 2009)(recognizing policy language identical to that contained in State Farms' policies as an "anti-assignment clause").

Further, at the time of the alleged assignments, Dameron's claim for benefits "had not been **reduced to a sum of money due or to become due** under the policy." Henkel, 29 Cal. 4th at 944 (emphasis

10

added). Dameron presents its Conditions of Admission form to patients as soon as they are cleared as "stable" by medical staff. At that point, the full nature and extent of the patients' medical treatment to be provided by Dameron, and the cost of that treatment, is unknown. For example, Insured Two and Insured Three's medical and billing records evince that they each received hundreds of dollars of medical treatment after they signed the Conditions of Admission forms.

For the stated reasons, "whether or not [each subject Insured] assigned any benefits . . . to [Dameron], any such assignment would be invalid because it lacked [State Farm's written] consent." Henkel, 29 Cal. 4th at 943. Therefore, summary judgment is granted in favor of State Farm on Dameron's failure to honor assignment of benefits claim. Summary judgment is also granted on Dameron's UCL claim since it is premised on the existence of valid assignments.

### IV. CONCLUSION

Plaintiff's motion for partial summary judgment (ECF No. 30) is DENIED, and Defendant's motion for summary judgment (ECF No. 22) is GRANTED. Judgment shall be entered in favor of State Farm.

Dated: October 9, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

11